## BAINBRIDGE vs. CLAY·

APPEAL from the court of the first district.

The proceedings of a debtor against his creditors are *res inter alios acta,* as to one who is not on the bilan; and of whose claim no mention is made there.

MATHEWS, J. delivered the opinion of the Court. This is an action, brought by the holder of a bill of exchange against the drawer, on protests for non acceptance and non payment· The answer to the petition contains a variety of pleas, opposed to the plaintiff's right to recover; and amongst others a peremptory exception of a *cessio bonorum* and judgment *de concurso de accreedores,* finally rendered on the surrender of property by the defendant.

This exception or plea in bar, was sustained by the court below, and judgment being accordingly pronounced, the plaintiff appealed.

The record, (as frequently happens,) is
loaded with bills of exceptions against the
opinions of the judge *a quo*, in suffering amend-
ments to the answer, and in admitting testimo-
ny alleged to be improper, &c. 1st. To a plea
of prescription, introduced by way of amend-
ment. 2d. To the introduction of the defend-
ant's books of account: and 3d. To the record
of the procedings, and judgment in the case of
*Clay* vs. *his creditors.* It is believed that neither
of those opinions is erroneous. By our laws,
great indulgence is given to the plea of pre-
scription. *Civ. Code*, 482, *art.* 36. The de-
fence set up by the defendant, most clearly re-
quired the production of the record of these
proceedings against his creditors. How far
this defence is supported by the documents, is
a different question.

It is true that, according to the provisions of
the Civil Code on the subject of evidence,
merchant's books do not prove against persons
who are not in trade, the sale and delivery of
the articles there entered. But this declara-
tion of their inadequacy to establish by inter-
nal evidence the facts entered in them, does
not preclude their introduction for other pur-
poses, or even to be assisted by additional tes-

timony in proving the charges made.    In the present case the books of the defendant were not produced to prove debts, in compensation of that claimed by the plaintiff, but only to shew the nature of the transaction, on which the latter arose, and indeed have but little effect on the respective rights of the parties.

The judgment of the court below, is based entirely on the power and effect which the judge allowed to the judgment of *concurso*, and in relation to this alone we will examine the cause.

In September, 1808, the defendant drew the bill of exchange now in question, which was protested for non-payment on the 14th of February, 1809.    On the second of March, of the same year, Clay obtained an order for a meeting of his creditors, who met on the 2d of April following, and whose proceedings were ordered to be homologated on the 2d of May. Further proceedings were had in December of the same year, by which it appears that a legal majority of the insolvent's creditors accepted his surrender, and gave him a discharge from all liability on their claims.

In the whole of these proceedings, which continued from March to December, no men-

tion is found of the plaintiff in this action, or of his debt; and therefore as to him it is clearly *res enter alios acta;* and, on general principles of law, can in no manner affect his rights. It only remains then to enquire if there be any thing in the circumstances of the debt now claimed, which forms an exception to these general principles, sufficient to destroy the claimant's pretentions, as recognized in the judgment of the district court. At the time when Clay commenced process, *vs.* his creditors, the ultimate fate of the bill now sued on could not have been known in New-Orleans, as there was not time to communicate from Baltimore, where it was to have been paid; and until this event occurred, that is until payment was finally refused by the drawee, the holder of the bill could not be considered an absolute creditor of the drawer for the amount there specified. But he was a creditor on condition, perhaps, and as such ought to have found a place on the schedule of the insolvent and been cited in the proceedings of the *concurso. Febrero, p.* 2, *book* 3, *chap.* 3, *no.* 14.

If, however, it be contended that he was in no shape a creditor during the proceedings carried on by the insolvent against his credi-

VOL. III. (N. S.)       34

tors, and has only become one since; this cannot better the situation of the present defendant; for then this suit is for a debt contracted since the failure, from the payment of which the appellant is certainly not exonerated by any thing done in his case of bankruptcy.

The right accorded by law to an unfortunate debtor to cede his property to his creditors, and thereby be relieved from personal arrests and pursuit for debts, may be properly considered a privilege and benefit enacted exclusively for him.

To avail himself of such privilege, all the requisites of law should be fully complied with on his part; and so far as he has failed to comply with them, he loses its benefit.

To prevent judicial pursuit by creditors; it is necessary that they should be cited in the *juicio de concurso.* See *Febrero, same part book & chap. no.* 21. In the case now under consideration, it is not shewn that the plaintiff had any kind of notice of the proceedings carried on by the defendant in the suit *vs.* his creditors.

The evidence of the case as exhibited by the record shews that notice of the dishonor of the bill, was forwarded in due time to the drawer. And if, as it may be pre-

sumed, it reached him after a reasonable delay, allowed for the distance which intervenes between the residences of the drawer and payee of said bill, an additional reason is furnished for making the former responsible in the present suit; because, such being the fact, he knew previous to the final determination of the matters in relation to his *cessio bonorum*, that the appellant was his creditor to the amount for which the bill was drawn.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be avoided, reversed and annulled, and it is further ordered adjudged and decreed that the plaintiff and appellant do recover from the defendant and appellee, $895 50 cents, with ten per cent damages, as allowed by law on protested bills and with legal interest from the judicial demand and costs in both courts.

*Hoffman* for the plaintiff, *Waggaman* for the defendant.